UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| FIRST TECHNOLOGY CAPITAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | No. 5:16-CV-138-REW |
| v. | ) ) | MEMORANDUM OPINION AND |
| BANCTEC, INC., | ) ) | ORDER |
| Defendant. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

BancTec, Inc. (BancTec), moved for leave to file an amended answer (to include counterclaims) due to allegedly newly discovered evidence. DE ##49, 50. First Technology Capital, Inc. (FTC), responded in opposition. DE #61. BancTec replied. DE #62. Following the briefing close, FTC separately moved for leave to file a surreply to BancTec's reply in support of its motion for leave to file an amended answer. DE #63. BancTec responded in opposition. DE #64. FTC replied. DE #66. Both motions are now fully briefed and ripe for consideration.

For the following reasons, the Court **GRANTS** FTC permission to file a surreply and **DENIES** BancTec leave to file an amended answer. A surreply is appropriate in these circumstances (to respond to BancTec's new reply arguments / theories). Further, DE #20 bars a Schedule 7-based counterclaim, and BancTec otherwise fails to satisfy the Rules' requirements to file an untimely pleading amendment.

## I.     RELEVANT BACKGROUND

The parties are currently hotly litigating what appears to be a relatively straightforward commercial lease dispute between two business entities. *See* DE ##23, 41, 51, 57, 59, 67 (Orders); *see also* DE ##65 (Transcript), 51 (referencing "the limited scope of this case"). To briefly summarize the background (to the extent necessary here), and simplifying somewhat, FTC and BancTec entered into a Master Lease Agreement (MLA) in February 2006 to govern FTC leasing certain equipment to BancTec. *See* DE #26-1 (MLA). The MLA contemplated a series of equipment transactions under various "Schedules" or "Sub-Schedules"; this case involves MLA Schedules 7 and 8. *See* DE ##26-3 & 26-10. A related case, concerning only Schedule 8, has pended in the Woodford Circuit Court since 2015.

In the present substantive motion, BancTec seeks leave to amend its answer and to assert counterclaims based on allegedly newly discovered evidence. Specifically, BancTec asserts that on October 5, 2016, it discovered an 11/24/09 email from John Ratliff, the late president of NRI Data and Business Products, Inc. (a wholly owned subsidiary of FTC), to Lisa Bridges, BancTec's former Comptroller, on an external hard drive in BancTec's possession on which Bridges stored certain emails. BancTec also cites a 10/20/08 email from Rita Carpenter, FTC's Operations Coordinator, to Bridges and Ratliff that FTC produced in discovery in the Woodford Circuit action as a basis for the request to amend the answer. FTC opposes the motion.

## II.    MOTION FOR LEAVE TO FILE A SURREPLY

As an initial matter, and to ensure completeness of the materials under consideration, the Court addresses FTC's motion for leave to file a surreply to BancTec's

reply in support of its motion for leave to file an amended answer. *See* DE #63 (Motion). BancTec responded. DE #64. FTC replied. DE #66. The matter is ripe for consideration.

"Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially 'when new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). "[M]any courts have noted" that surreplies "are highly disfavored." *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012). Still, the Sixth Circuit reviews a district court's decision whether to grant leave to file a surreply "under the deferential abuse-of-discretion standard." *Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 549 (6th Cir. 2014). A district court abuses its discretion, for example, when it denies permission to file a surreply after a party presents "new arguments and new evidence in [its] reply brief." *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010). Overall, though, "[w]hether to permit a party to file a surreply is a matter left to the trial court's discretion." *Rose v. Liberty Life Ins. Co. of Boston*, No. 3:15-CV-28-DJH-CHL, 2015 WL 10002923, at *1 (W.D. Ky. Oct. 19, 2015).

The Court has fully analyzed the underlying briefing—DE ##49, 50, 61, and 62—as well as the briefing on the motion for leave to file a surreply—DE ##63, 64, and 66. The Court, in an exercise of its discretion, finds FTC's proposed surreply appropriate in the circumstances. The Sixth Circuit's focus is whether "new submissions and/or arguments are included in a reply brief." *Key*, 551 F. App'x at 265; *Ashton*, 387 F. App'x

at 583. Here, as FTC persuasively lays out, BancTec did indeed include new arguments in DE #62, and a surreply is therefore appropriate. To summarize, and speaking generally, BancTec shifted (at least in its focus) from a $1 buyout theory to a $0 buyout theory and inserted new arguments concerning, *e.g.*, "quotes," "deal points," and the word "purchase." *Compare* DE #50*, with* DE #62. The arguments likewise differ, at least by implication, concerning BancTec's posture as to Stipulated Purchase Value and, indeed, the basic nature of the FTC-BancTec lease at issue. BancTec also attached new evidentiary submissions. DE ##62-1, 62-2, 62-3. As FTC stated, the tendered surreply is confined to BancTec's new arguments and documents, *see* DE #63-1, at 2, and appropriately refrains from returning to ground already covered in the underlying motion briefing.

Further, FTC filed the motion for leave to file a surreply essentially immediately (2 days) after BancTec's reply, greatly diminishing any timing or gamesmanship concerns that may negatively tinge surreply motions. *See Key*, 551 F. App'x at 265 ("[c]onsidering the amount of time that passed between Shelby County's filing of its reply brief and Key's filing of her motion for leave to file a sur-reply" and concluding the district court did not abuse its discretion in denying Key permission to file a surreply given an "unexplained delay of six months in moving for leave to file" it). Overall, under the Sixth Circuit's standard, the Court finds permitting an FTC surreply, in these circumstances, appropriate. FTC should fairly have an opportunity to address new arguments or theories (and documents) BancTec injected into the reply.

For these reasons, the Court **GRANTS** DE #63 and **DIRECTS** the Clerk to file DE #63-2 in the record as a surreply to DE #62.

### III.     MOTION FOR LEAVE TO FILE AN AMENDED ANSWER

BancTec moved for leave to file an amended answer due to allegedly newly

discovered evidence. DE ##49, 50. FTC responded in opposition. DE #61. BancTec

replied. DE #62.[1] FTC surreplied. DE #63-2. The matter is ripe for consideration.

> *1.     DE #20 precludes a Schedule 7-based counterclaim.*

In July 2016, the parties agreed, and the Court ordered, as follows:

> On or before August 5, 2016, FTC shall file a First Amended Complaint in
> this action to assert causes of action under [Schedules 7 and 8] to the
> [MLA]. BancTec shall timely file an answer to the First Amended
> Complaint and may also assert a counterclaim, but any counterclaim filed
> by BancTec, whether it is asserted in its answer to the First Amended
> Complaint or before or after filing of the answer, shall be limited solely to
> any causes of action that BancTec may have under Schedule 8 to the
> Master Lease. Under no circumstances shall BancTec be permitted to file
> a counterclaim against FTC with regard to [Schedule] 7 to the Master
> Lease.

DE #20, at ¶ 3. The relevant language is crystal clear: "BancTec . . . may . . . assert a

counterclaim, but any counterclaim," even if (as here) tendered "after filing . . . the

answer, shall be limited solely to any causes of action that BancTec may have under

Schedule 8." *Id.* The Court was explicit, based on the parties' stipulation and agreement:

"**Under no circumstances** shall BancTec be permitted to file a counterclaim against FTC

with regard to" Schedule 7. *Id.* (emphasis added).

The Agreed Order contemplates no exceptions and includes no carve-outs for

subsequent posture changes. The Order is clear and unambiguous; it absolutely bars any

---

[1] Shockingly, BancTec's reply devotes but one scant paragraph to the critical Rule 16
issue (as well as one mere paragraph on the DE #20 issue). *See* DE #62, at ¶¶ 6, 14.
BancTec thus chose not to confront FTC's diligence- and DE #20-related arguments in
any meaningful way.

Schedule 7-based counterclaim by BancTec against FTC. It reflects Hon. Mark L. Moseley's signature, signifying BancTec's explicit agreement to the terms.

It appears the parties agreed to the Order's language in an attempt to collegially resolve then-pending concerns over the extant schedule, based primarily on BancTec's retention of new counsel (*i.e.*, Hon. Keith A. Langley). *See* DE ##17 (BancTec's motion to amend the schedule), 18 (Proposed Agreed Order, filed the same day); 61, at 4-5, 11 (FTC narrating the negotiations leadings to the Agreed Order); 65, at 59 (same). Mr. Langley had (unsuccessfully) attempted to obtain *pro hac vice* status just the day prior. *See* DE ##15 (Motion); 16 (Order denying without prejudice).

Whatever the ultimate reason(s), BancTec, through its counsel, explicitly agreed and consented to language absolutely barring *any* Schedule 7 counterclaim. The Court issued the parties' agreed language as an Order, which resolved the then-pending schedule-related motion. FTC here raised DE #20 in response, *see* DE #61, and BancTec, in reply, devotes one paragraph to the contention, simply asserting, with no support or citation to authority, that "fraud vitiates all." *See* DE #62, at ¶ 14; *see also* DE #65, at 59-60 (Mr. Langley: "[E]verything is vitiated by fraud."). The Court's Order was clear, however, and BancTec has provided no reason or authority to ignore its plain language. BancTec also has not sought, through any appropriate mechanism, relief from the Agreed Order. BancTec made the strategic business or litigation choice to consent, through counsel, to language barring a Schedule 7 counterclaim, seemingly in return for FTC's agreement to a schedule extension, postural concessions, and to BancTec filing a Schedule 8 counterclaim. BancTec, after receiving the benefit of the bargain, cannot now

escape the Agreed Order's negotiated and bargained-for limitations. The unambiguous language of DE #20—a Court Order—bars a Schedule 7-based counterclaim.

> 2.   *BancTec has not satisfied the Rules' requirements to file an untimely pleading amendment.*

Regardless of the posture regarding DE #20, BancTec has not satisfied the Federal Rules of Civil Procedure's requirements to file an untimely pleading amendment, the endeavor here. The Court thus, on this basis, wholly denies BancTec's effort to file an amended answer, including any counterclaim regarding both Schedules 7 and 8.

BancTec's motion to amend is untimely under the current case schedule. BancTec had until September 16, 2016, by its own agreement, to file any motion to amend pleadings. *See* DE ##20, at ¶ 3; 14, at ¶ 5. It filed the current motion on October 13, 2016, nearly a month tardy, so the motion is facially untimely. Accordingly, BancTec seeks leave to file an untimely amended answer, citing Rules 6(b)(1)(B) and 16. *See* DE ##49, at 1; 50, at 7.

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause requires an assessment of the justification for relief, the party seeking modification's diligence, the overall scheduling effects, and any prejudice to the opponent. *See, e.g., Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); *Leary v. Daeschner*, 349 F.3d 888, 904-09 (6th Cir. 2003) (discussing the interplay between Rules 15 and 16); *Moore v. Indus. Maintenance Serv. of Tenn., Inc.*, 570 F. App'x 569, 577 (6th Cir. 2014). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (citation and internal quotation marks omitted). Prejudice to the opposing

party is also a factor. *Id.* District courts retain wide discretion over case management; the Sixth Circuit reviews a court's "decision to amend its scheduling order for abuse of discretion." *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 377-78 (6th Cir. 2009).

Further, as BancTec's request to change the schedule implicates a deadline already passed, Rule 6 also affects the burden and analysis. Under that Rule, as to an expired deadline, the Court "may" extend the time "for good cause," but only, per (b)(1)(B), "on motion made after the time has expired if the party failed to act because of excusable neglect." *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . (B) on motion made after the time has expired if the party failed to act because of excusable neglect."). Excusable neglect is an equitable balance of five factors: (1) prejudice to the nonmoving party; (2) length of delay and potential impact on judicial proceedings; (3) reason for the delay; (4) whether the delay was within the reasonable control of the nonmoving party; and (5) whether the late-filing party acted in good faith. *See Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 113 S. Ct. 1489 (1993)); *see also, e.g.*, *Howard v. Nationwide Prop. & Cas. Ins. Co.*, 306 F. App'x 265, 266-67 (6th Cir. 2009) ("The determination of excusable neglect is an equitable one, taking account of all relevant circumstances surrounding the party's omission.").

*First*—Rule 16. Good cause, per Rule 16(b)(4), requires assessing the justification for relief, the party seeking modification's diligence, the overall scheduling effects, and any prejudice to the opponent. According to the Sixth Circuit, however, the primary

8

consideration is the moving party's diligence. BancTec, in this scenario, wholly flunks that test.

The entire basis for BancTec's motion is two emails—one that BancTec has had since, at the latest, November 3, 2015, when FTC produced it in state court discovery (but really since 2008, when Lisa Bridges received it), *see* DE #50-5 (10/20/08 Carpenter email), and one that has been in BancTec's possession since 2009, when Bridges received it and later saved it onto an external hard drive. *See* DE #50-4 (11/24/09 Ratliff—Bridges email). All proposed answer amendments center on these emails and their alleged impact or effect on the case.

Clearly, in the circumstances, BancTec did not act diligently in attempting to meet the case's pleading amendment deadline.

BancTec first disclosed Bridges as an individual likely to have discoverable information, according to Dimple Sehgal, BancTec's corporate counsel, on August 12, 2016. DE #50-7 (Sehgal Declaration), at ¶ 5. Bridges worked at BancTec at the time of MLA formation but no longer does so. As an initial matter, it is patently incredible that BancTec first realized to disclose Bridges in August 2016, given the history of litigation between the parties, including the state court matter. Thus—per BancTec—Bridges "has knowledge regarding the Master Lease Agreement, course of dealing of the parties with respect to buyout of the subleases, and communications between the parties related to the Schedule 8 buy-out[.]" DE #61-3, at 6 (Initial Disclosures). Despite Bridges's knowledge of Schedule 8, BancTec failed to disclose her (at least to that extent) in the state court suit (which concerned Schedule 8). *See* DE #61-2, at Answers to I4 & I7-I12. BancTec did, however, list Bridges in its response to state-court I13: after incorporating its response to

I4, BancTec stated that Bridges was "also involved in negotiations regarding prior buyouts of equipment schedules 1-7." *Id.* at Answer to I13.[2]

Both scenarios are negatives for BancTec. In the first, where it failed to disclose Bridges as a witness with discoverable information as to Schedule 8 in the Woodford case (but in August 2016, certified she, in fact, is such a witness), this evidences lack of diligence in investigating the case (including potential defenses, affirmative defenses, and counterclaims) and discerning the party's own witnesses. In the second, BancTec certified that Bridges had knowledge concerning Schedules 1-7 on August 10, 2015, yet evidently did not thoroughly search for relevant emails involving Bridges until ***over a year later***.

Regardless of these considerations, the 8/12/16 Bridges disclosure was **over a month** before the pleading amendment deadline here. BancTec provides precious few specifics concerning the intermediate steps—a lack of detail indicating, to the Court, a lack of diligence. At some undisclosed point "[f]ollowing the [Bridges] disclosure," BancTec's lawyers "instructed" Sehgal "to conduct an exacting search [of] communications between Lisa Bridges and FTC[.]" DE #50-7, at ¶ 6. After "turn[ing] BancTec upside down," Sehgal "found," in an unspecified location, "an external hard drive that Lisa Bridges had used to manually save select emails[.]" *Id.* at ¶ 9. Sehgal spent 4 days reviewing the emails, *id.* at ¶ 10, and on October 5, 2016, discovered the Ratliff—Bridges 11/24/09 email at issue. *Id.* at ¶ 11. "Upon finding" this email, Sehgal

---

[2] Thus, Sehgal's sworn declaration is wrong to the extent it broadly claims that "[n]either BancTec nor FTC had previously identified Lisa Bridges as a person with knowledge." DE #50-7, at ¶ 5. BancTec appears to not recall *its own* verified prior disclosure, again suggesting to the Court a general lack of diligence.

then "located" the 10/20/08 Carpenter—Bridges email "which was produced by FTC in the State Court Action[.]" *Id.* at ¶ 12.

BancTec, thus, gives utterly no details on, at least, the following: (1) when, exactly, Langley LLP directed Sehgal to conduct the search (*i.e.*, the temporal proximity to the disclosure); (2) what, precisely, Sehgal's search efforts entailed (among the Court's questions are the precise meaning of "turn[ing] BancTec upside down" and the contours of the alleged "extraordinary search efforts"); (3) how long Sehgal's search lasted; (4) where Sehgal found the external hard drive; (5) the precise contents of the drive (*e.g.*, how many emails, what other documents, etc.); and (6) the intensity of Sehgal's email review efforts (time invested, and otherwise). These omissions foreclose a finding of diligence—where BancTec has the burden—in the particular circumstances.

Clearly, given this history and the information discovered, had BancTec been diligent in the Woodford matter, it would have disclosed Bridges regarding Schedule 8 (as it now does) and it would have found her emails, which remained in BancTec's own possession (as it now has). Further, had BancTec been diligent before this Court, it would have searched for all Bridges emails immediately after disclosing her (again, over a month before the relevant deadline). Additionally—and even more remarkable to the Court—if BancTec had been diligent, Sehgal would not have had to re-"locate" or re-"discover" the 10/20/08 email, which BancTec had since 2008 and which FTC itself gave to BancTec a year prior. BancTec's disinterested or inattentive approach to the issues signals case neglect, not diligence. It was utterly foreseeable that emails involving

Bridges—a central case player—would be relevant to the case merits; only BancTec's apparent sluggishness or carelessness resulted in the late discovery.[3]

BancTec responds with "three reasons why the" alleged "fraud was not uncovered at an earlier date[.]" DE #50, at 9. The Court rejects the second two—concerning "FTC's aggressive litigation strategy" and "the recent combination of the schedules 7 and 8 suits"—out of hand. First, FTC is entitled to litigate the case, within the law and the applicable Rules, at the pitch it chooses; its litigation strategy cannot be a reason to conclude BancTec acted diligently. BancTec is not excused from its own litigation obligations because of the actions, however aggressive, of an opponent. Diligence is a measure of a litigant's own actions, not those of its adversary.

The second reason, to the Court, is simply nonsensical. As the Court earlier recounted, BancTec failed to diligently search for Bridges's emails, even after disclosing her as a person with knowledge regarding Schedules 1-7 in the state court action (which concerned Schedule 8) or after disclosing her in this case. Before this Court, BancTec now claims Bridges has knowledge of Schedule 8, but it did not make such a claim in the state court action. Only BancTec's marked lack of prudence prevented its earlier discovery of the relevant Bridges email, and BancTec offers no logical or convincing reason that the suits needed to "merge" before it "was able to put the pieces together to uncover the" alleged "fraud." DE #50, at 10. Again, BancTec had the Bridges email *in its*

---

[3] Further, BancTec forecasted that its argument, later in the case, will be that it did not understand its own deal. *See* DE #65, at 56 ("THE COURT: So is your story that BancTec did not even understand its own deal, is that what you're going to be telling the Court? MR. LANGLEY: Yes, sir."). The Court views this as yet another piece in the puzzle indicative of a general lack of BancTec diligence. *See also, e.g.*, DE #50, at 5 (BancTec admitting that it "did not look any further" at the 10/20/08 email at the time of production).

*own possession since 2009*, yet did not discover it until after the amendment deadline in this case, due only to its own lethargy.

BancTec's excuse with more traction is reason 1: "FTC attempted to cover up the" alleged "fraudulent activity by not producing John Ratliff's emails or any documents related to stipulated purchase value[.]" DE #50, at 9. Ultimately, though, this too is unconvincing.

This reason only potentially applies to the Ratliff—Bridges email, not BancTec's re-discovery of the 2008 Carpenter email, which FTC produced to BancTec long ago. As discussed at the October 31, 2016, discovery hearing, there are patent Ratliff email accessibility issues, centered around the inaccessibility of a server, based on apparently now-obsolete technology, on which Ratliff's emails were backed up. Per Mr. Gartland, accessing the emails will require "hir[ing] somebody who's an engineer to build [two pieces of] machinery . . . to read this data[.]" DE #65, at 9. Thus, these emails are not currently accessible to FTC, and BancTec has taken no formal steps (at least of which the Court is aware) to resolve the question or ensure access to the information.

Further, and more convincing to the Court, even if FTC did have Ratliff emails that it improperly failed to produce, this does not excuse BancTec's failure to search *its own records* for Bridges emails—ultimately found by BancTec's in-house counsel on a BancTec hard drive—*over a month* after BancTec's disclosure of Bridges in this case, and *over a year* after BancTec's disclosure of Bridges in the Woodford case. BancTec knew that Bridges was a central player and obviously a person with relevant knowledge, yet displayed no diligence in its investigation of her knowledge or interactions concerning the underlying facts.

13

Although diligence (or lack thereof) is the primary focus of Rule 16's "good cause" inquiry, the other relevant factors—the overall scheduling effects and prejudice to the opponent—similarly weigh against permitting an answer amendment here.

*Overall scheduling effects*—Permitting the amendment will undoubtedly introduce further delay in the case schedule and assuredly require an extension of the discovery deadline and the connected dispositive motion deadline. The case schedule has already been completely revamped once. *Compare* DE #14*, with* DE #20. Due to the unusually divisive manner in which the parties have litigated the case, and for the reasons stated at the October 31, 2016, discovery conference, the Court continued the critical case deadlines a second time. *See* DE #59 (Minute Entry Order). Counsel for FTC, at that conference, forecasted his efforts to seek additional discovery time if the Court permitted the amendment. DE #65, at 37 (THE COURT: "My expectation is, Mr. Gartland, and tell me if I'm wrong, if I allow that amendment to happen, which includes the fraud counterclaim, I mean, I presume you're going to say you need additional discovery; is that true or not? MR. GARTLAND: No question about it.").

Indeed, permitting the amendment would inject numerous new claims into the case. As the Court stated in the discovery conference, it sees no merit to BancTec's nonsensical argument that *adding* additional and varied fraud claims will simplify the case. *See* DE #65, at 37 ("THE COURT: I did laugh out loud, Mr. Langley, when I read the argument that allowing a fraud counterclaim to be added would simplify the case. I'm not sure I've ever seen those two put together in that way."). With the December 30, 2016, discovery, and the January 17, 2017, dispositive motion deadlines quickly approaching, the Court perceives further scheduling relief as practically unavoidable if it

14

granted BancTec's request to amend the answer. Accordingly, the overall negative scheduling effects weigh against permitting the amendment.

*Prejudice to FTC*—If the Court permitted the amendment, FTC would suffer undue prejudice. "[A] determination of the potential prejudice to the nonmovant also is required when a district court decides whether or not to amend a scheduling order." *Leary*, 349 F.3d at 909. Most obviously, FTC would face additional discovery time and expense if the Court granted BancTec's motion. *See Commerce Benefits Grp.*, 326 F. App'x at 377-78 (finding prejudice based on "further delay in discovery," "additional time and expense incurred," and the likely need for "additional discovery time"); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (affirming denial of leave to amend when the opposing party would face additional discovery and after, as here, "a motion for summary judgment had been filed"); *see also, e.g.*, *Birchwood Conservancy v. Webb*, No. 5:12-CV-335-KKC, 2014 WL 4443467, at *3 (E.D. Ky. Sept. 9, 2014) (denying motion to modify scheduling order and finding prejudice where granting the motion "would require re-opening discovery to permit [the non-moving party] a fair opportunity to explore [the] new damages theory"). Especially at this late stage of the case, with mere days left in discovery, adding new claims would unquestionably require a substantial schedule reset, reopening discovery for additional weeks or months and expanding the appropriate scope of discovery. *See* DE #65, at 32 (The Court: "If [the motion]'s granted, obviously that's going to affect discovery in the case.").

"[B]rand-new claims," according to the Sixth Circuit, "more obviously create prejudice because the [opposing party] must contend with an entirely different

substantive issue." *Leary*, 349 F.3d at 909 n.27. That is just the case here—the new claims and theories that BancTec seeks to introduce to the case would certainly qualify under this analysis. *See also id.* at 909 (countenancing prejudice even if the movant merely "recast" its "claims at [a] late stage in the proceeding"). Permitting the amendment, in the particular circumstances, would indeed require FTC "to expend significant additional resources to conduct discovery and prepare for trial [and] significantly delay the resolution of the dispute[.]" *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). The Court finds, under the Sixth Circuit's standard, that FTC would face undue prejudice if the Court permitted BancTec's amendment; this factor also, thus, weighs against granting permission to amend.

For these reasons, BancTec does not satisfy Rule 16's requisites for modifying the schedule to permit an untimely amendment.

*Second*—Rule 6. The parties give scant consideration to Rule 6; BancTec, though offhandedly mentioning it in DE #49 (the motion itself), in a baffling omission, nowhere cites it in DE #50 (the lengthy substantive memorandum). BancTec, accordingly, never mentions or identifies Rule 6's applicable language, the excusable neglect standard, or the Sixth Circuit's controlling interpretation. FTC, for its part, relegates Rule 6 to a footnote (presumably because BancTec does not seriously advocate for satisfaction of excusable neglect). *See* DE #61, at 8 n.3. BancTec's woefully inadequate treatment of the topic is sufficient to justify summary dismissal of any Rule 6 argument as abandoned. *See, e.g.*, *Montgomery v. Kraft Foods Global, Inc.*, 822 F.3d 304, 312 (6th Cir. 2016). However, for thoroughness, and because BancTec does include a single citation to the Rule in DE #49, the Court will briefly analyze the issues.

16

To reiterate: Excusable neglect is an equitable balance of five factors: (1) prejudice to the nonmoving party; (2) length of delay and potential impact on judicial proceedings; (3) reason for the delay; (4) whether the delay was within the reasonable control of the nonmoving party; and (5) whether the late-filing party acted in good faith.

The Court has substantially explored all these factors in its discussion above. For the reasons already covered, the Court finds that FTC, the nonmovant, would face undue prejudice if the Court permitted the amendment and that the proposed amendment would cause additional lengthy delay in the judicial proceedings. The Court also finds, for the reasons already set out extensively, that BancTec has offered no justifiable or excusable reason for the delay. The Court concludes, per the above discussion, that BancTec's delay here was *not* in FTC's reasonable control; rather, BancTec is squarely responsible for its own lack of prompt email discovery. Finally, however, the Court does not question BancTec's or its counsel's good faith in bringing the matter to the Court's attention. On balance, considering all the factors, case circumstances, and the extensive discussion above (as well as BancTec's failure to adequately brief or argue the Rule 6 issue), the Court concludes that BancTec has not established excusable neglect to permit the Court to grant a tardily requested extension of time. Accordingly, BancTec also does not satisfy Rule 6's requirements for an extension of time after it failed to act by the extant deadline.

For all these reasons, the Court wholly denies BancTec's attempt to untimely amend the answer.[4]

---

[4] Because the Court so concludes, in an exercise of discretion, and given the wide latitude of permissible exercises of discretion afforded district courts on this topic, the Court declines to engage in an extensive, alternative Rule 15 / futility review. The Court's clear findings on Rules 6 and 16, the proof and decisional record, and the connected diligence-centered standard, easily suffice to resolve this motion against BancTec.

IV.     **CONCLUSION**

Per the above analysis, the Court **GRANTS** DE #63, **DIRECTS** the Clerk to file DE #63-2 in the record as a surreply to DE #62, and wholly **DENIES** DE #49.

Finally, the Court would note that it has not considered the extent to which the alleged new evidence may fit into defenses or defense theories already stated in the pleadings. The Court does not intend by this Order to address, directly or by implication, whether and how the emails may impact the case under the extant pleadings.

This the 27th day of December, 2016.

Signed By:

Robert E. Wier

United States Magistrate Judge