UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| FIRST TECHNOLOGY CAPITAL, INC., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | No. 5:16-CV-138-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| BANCTEC, INC., | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Rocky Balboa thrived on second chances: it took him two bouts to best both Apollo Creed and, later, Clubber Lang. *See* Rocky (Chartoff-Winkler Productions 1976); Rocky II (Chartoff-Winkler Productions 1979). As much as this litigation may resemble heavyweight boxing, hype included, it differs in, at least, one critical way: litigants rarely get what Rocky depended on—a second opportunity to come out on top.

BancTec, weeks after discovery closed and after the filing of dispositive motions, asked the Court to reconsider its prior denial of the untimely motion to modify the schedule to permit an amended answer. FTC opposed, and BancTec replied. The Court assumes familiarity with the background (the road to DE #69), evaluates each contention, and wholly **DENIES** BancTec any relief via reconsideration.

*Standard of Review*

"The Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 88 F. App'x 949, 959 (6th Cir. 2004). However, "[d]istrict courts have inherent

1

power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991); *see also, e.g.*, *In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 326 n.6 (6th Cir. 2009) ("[A] district court may always reconsider and revise its interlocutory orders while it retains jurisdiction over the case."). "This authority allows district courts to afford such relief from interlocutory orders as justice requires. Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 88 F. App'x at 959 (internal quotation marks and alteration removed); *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (same). "This standard obviously vests significant discretion in district courts." *Rodriguez*, 88 F. App'x at 959 n.7; *see also, e.g.*, *Kerns v. Caterpillar Inc.*, 144 F. Supp. 3d 963, 967 (M.D. Tenn. 2015) (applying the standard); *Simmerman v. Ace Bayou Corp.*, 304 F.R.D. 516, 518 (E.D. Ky. 2015) (same).

*Analysis*

As background, BancTec had until September 16, 2016, by its own agreement, to file any motion(s) to amend pleadings. *See* DE ##20, at ¶ 3; 14, at ¶ 5. Nearly a month after that deadline passed, BancTec filed an untimely motion for leave to amend its answer. DE ##49, 50. The Court, accordingly, undertook an extensive evaluation of and ultimately denied BancTec's belated motion to change the schedule and tardily amend the answer. *See* DE #69 (Memorandum Opinion & Order denying BancTec's motion). BancTec now asserts that the Court should reconsider DE #69 based on (1) two alleged

clear errors of law, (2) newly available evidence, and (3) manifest injustice. DE #77 (Motion). FTC opposes on each ground. DE #86 (Response); *see also* DE #94 (Reply).

**First—Clear Error of Law**

BancTec first contends that the Court committed two clear errors of law: (1) finding prejudice, which BancTec claims FTC "failed to address and cannot prove," and (2) applying Fed. R. Civ. P. 6(b). DE #77-1, at 4-8.

*First*—Prejudice.

The Court, indeed, determined that, if it permitted BancTec's tardy amendment, "FTC would suffer undue prejudice." DE #69, at 15. "Most obviously," this prejudice resulted from the "additional discovery time and expense" FTC would face "if the Court granted BancTec's motion." *Id.* The Court continued: "Especially at this late stage of the case, with mere days left in discovery, adding new claims would unquestionably require a substantial schedule reset, reopening discovery for additional weeks or months and expanding the appropriate scope of discovery." *Id.* at 15-16 (concluding that the brand-new claims BancTec wanted to introduce would require FTC "to expend significant additional resources to conduct discovery and prepare for trial and significantly delay the resolution of the dispute" (internal alteration omitted)).

As an initial matter, the Court finds BancTec wrong on the law regarding a prejudice determination.[1] Under the Sixth Circuit's authoritative interpretation, the Court merely must "*evaluate* prejudice to the opponent" and make "*a determination of* the potential prejudice to the nonmovant" before modifying a scheduling order. *Leary v.*

---

[1] The Court also chides BancTec on its approach to the issue. Clearly, the proper time to make this argument was in the original briefing—if not in the originating motion, then, at least, in the reply. BancTec failed to properly or timely present this purely legal argument to the Court.

3

*Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (emphases added). The Sixth Circuit found the district court in *Leary* to have "properly applied the governing law" *even though* the court only "implicitly . . . commented on the prejudice that Daeschner would suffer[.]" *Id.* In fact, the Circuit has called "prejudice to the party opposing" simply a "relevant consideration" in the Rule 16 analysis, subsidiary to the "primary measure" of the moving party's diligence. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). In *Inge*, the Circuit *itself* made a determination of prejudice: "*we envision* no prejudice to Defendant from granting leave to amend." *Id.* at 626 (emphasis added). Both *Leary* and *Inge* decline to particularly pin the prejudice burden to either side, instead explicitly countenancing a court independently evaluating the circumstances, in the totality, and making that determination. *See also Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) ("To deny a motion to amend, **a court must find** at least some significant showing of prejudice to the opponent." (emphasis added; internal quotation marks removed)); *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (same); *Tefft v. Seward*, 689 F.2d 637, 639-40 & 639 n.2 (6th Cir. 1982) ("The amended cause of action *is not so different as to cause prejudice* to the defendants, nor do *we find* the delay particularly 'undue' considering the course of this case through a prior appeal to this Court." (emphases added)).

Very recently, the Sixth Circuit has confirmed this understanding, expressing that when a party "moves to amend the complaint after the deadline established by a scheduling order, [that party] first must show good cause . . . and **the district court must evaluate prejudice to the nonmoving party**[.]" *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014) (emphasis added). The Court of Appeals was explicit: "In order

4

to demonstrate good cause, ***the [movant] must show* that the original deadline could not reasonably have been met despite due diligence *and that the opposing party will not suffer prejudice*** by virtue of the amendment." *Id.* (emphases added). *Ross*, thus, explicitly places the burden of demonstrating the *lack* of prejudice on the moving party.[2]

As these cases harmoniously indicate, an evaluation of and a finding on prejudice to the nonmovant is, indeed, required to deny a motion to amend, but **that is an evaluation and finding the Court conducts and makes**. Foundationally, the burden to establish Rule 16(b)(4) "good cause" inarguably is on the movant. *Leary*, 349 F.3d at 909.[3] Cases (though, admittedly, they are perhaps not as clear or consistent as may be desired) indicate that a prejudice determination is either (1) an "addition[al]" obligation, a distinct evaluation the Court "also is required" to undertake in this context, *id.*, or (2) a component of good cause on which the movant bears the burden, *Ross*, 567 F. App'x at

---

[2] BancTec only cites one Sixth Circuit case on the topic—a 27-year-old, unpublished, per curiam, 3-paragraph opinion. *See Benson v. Consol. Rail Corp.*, 912 F.2d 465, No. 89-3799, 1990 WL 125373, at *1 (6th Cir. Aug. 29, 1990) (*per curiam*) (table). **No** subsequent case has **ever** cited *Benson* for **any** proposition. Foundationally, the Court declines to apply *Benson* because "unpublished cases are not binding precedent." *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002). Even evaluating *Benson*, the decision simply jumps, in one sentence, from the well-established *Moore* quote (which avoids burden assignment) to mandating a proof burden with **no analysis** and **no citation to authority** for that proposition. *See* 1990 WL 125373, at *1. *Benson* is not binding, not persuasive, not supported, and completely uncited for the proposition BancTec asserts it establishes. Further, the Sixth Circuit's 2014 pronouncement in *Ross* squarely contradicts *Benson*.

*Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537 (8th Cir. 1977) (cited by BancTec), is solely a Rule *15* case, as is *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987). These aged cases, from foreign Circuits, are not binding and, regardless, are inapposite in this Rule 16 context.

[3] The Court generally agrees with FTC that the framework BancTec proposes—where the movant has the overall "good cause" burden (including on the primary diligence factor) but the nonmovant has the burden of proving one subsidiary factor, and if the nonmovant fails on the subsidiary factor, the movant wins, even if it fails on the primary factor—is "bizarre" and "tortured" indeed. *See* DE #86, at 2-3.

306.[4] Perhaps the nonmovant (as the party hoping to avoid amendment by making prejudice evident to a court) typically would press the prejudice case, but the Sixth Circuit makes clear, at a minimum, that the prejudice determination is ultimately for the Court, considering the totality, the parties' offerings, and the case record and status. In fact, the Circuit appears to squarely put the burden to prove a *lack* of prejudice on the *movant*. The Court is satisfied that it properly, in these circumstances, applied the law regarding prejudice.

However, even hypothetically assuming (contrary to Sixth Circuit case law) that BancTec is correct that FTC had the burden to establish prejudice, FTC *did* satisfactorily raise prejudice in the response and earlier proceedings in the case. FTC argued, albeit in the Rule 6 context, that potential prejudice, as one "of the excusable neglect factors[,] weigh[s] against granting the Second Motion for Leave." DE #61, at 8 n.3. The Court has re-reviewed the entirety of DE #61 and finds considerations of prejudice implicit throughout. Obviously, to the Court, FTC strenuously opposed the motion to amend and predicted prejudice if the Court had granted the motion.

---

[4] Thus, in a hypothetical case where the movant does not prove diligence, yet there would be no prejudice to the nonmovant, what is the outcome? The Court need not definitively resolve this question here, but the text of Rule 16(b)(4) and Sixth Circuit cases indicate the movant would lose. If a court may modify a schedule "only for good cause," and prejudice is a consideration "[i]n addition to Rule 16's explicit 'good cause' requirement," *Leary*, 349 F.3d at 909, then logically a lack of prejudice could not trump a lack of good cause so as to permit schedule alteration. Further, if *Ross* is right, a lack of prejudice is an explicit factor for the movant to prove, meaning, in this hypothetical, the movant certainly loses. *See, e.g.*, *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) ("Even if the Court were to agree that an amendment would not have prejudiced Paul Revere, prejudice to Paul Revere is merely a consideration that informs whether Korn has satisfied the 'good cause' requirement of the *Leary* standard. To satisfy the *Leary* standard, Korn must also explain why he failed to move for the amendment at a time that would not have required a modification of the scheduling order. *Leary*, 349 F.3d at 906-08. Korn fails to do so.").

In fact, in opposition to BancTec's first motion for leave to file an amended answer (DE #38), which BancTec later withdrew (DE #47), FTC **explicitly** argued: "**FTC will suffer prejudice if the Second Motion to File Late is granted**." DE #45, at 2 (emphasis added); *see also id.* at 17 ("FTC will potentially suffer prejudice if the Second Motion to File Late is granted." (emphases removed)). FTC cited the pending motion for summary judgment (DE #42), the looming discovery deadline, scheduled depositions, the likely deadline continuances granting an amended answer would require, and the increases in attorney fees, expenses, and costs to FTC as the sources of potential prejudice. *Id.* at 18-19; *see also id.* at 19 ("The 'potential prejudice' to FTC is obvious."). Prejudice to FTC was a palpable enough issue to BancTec for it to anticipatorily address the alleged lack of prejudice in DE #50, at 11. The Court agrees that the prejudice FTC would have faced is manifest in this record. Indeed, many of the prejudice markers are mere observations of case status or state of the record (in FTC's creative phraseology, "judicially noticeable indicia"), things that need not necessarily be "proven" by a nonmovant but rather can be perceived by the Court as it manages the case. *See Leary*, 349 F.3d at 908 (holding, in the court's own record evaluation, that "[o]bviously Daeschner would suffer prejudice" if the court permitted an amendment that introduced "new claims," finding such prejudice "apparent" in context).

Additionally, FTC made its position on prejudice perfectly clear at the October 31, 2016, discovery conference. As one example, the Court queried FTC's counsel on the likely posture if the Court permitted BancTec's proposed amendment. Mr. Gartland responded that there was "[n]o question" that if the Court permitted an amended answer, FTC would "say [it] need[s] additional discovery." DE #65, at 37. The Court specifically

7

relied on the discovery conference colloquy in making the prejudice determination. DE #69, at 15. The Court easily concludes, on this record, that FTC unequivocally, fully, and adequately, in context, presented and argued prejudice.[5]

*Second*—Rule 6.

BancTec next argues, rather tersely, that "Rule 6(b) does not apply[.]" DE #77-1, at 7-8 (emphases removed). This strikes the Court as an unusual contention, given that BancTec *explicitly* made its prior motion "pursuant to . . . Fed. R. Civ. P. 6(b)(1)(B)[.]" DE #49, at 1. Indeed, Rule 6(b) is the *only* Federal Rule that DE #49 cites as a motion basis.[6]

BancTec's argument is so inconsequential the Court hardly knows where to begin. As a starting point, the Court fails to perceive how it made a clear error of law by addressing an authority the movant brought to the Court's attention—on *the very first page* of its motion—and which it stated was the entire basis for its request for relief. DE #49, at 1. Addressing Rule 6(b), when BancTec made its motion "pursuant to" that Rule, was wholly proper.

---

[5] It is conceivable that, in some circumstances, as BancTec insinuates, the Court can address some types of potential prejudice through changing the timing of the trial. *See* DE #77-1, at 7. However, continuing trial would not here adequately protect against the specific prejudice the Court found: the "additional discovery time and expense" FTC would face, the likely requirement of "re-opening discovery" here, FTC having to "contend with" brand-new claims at this "late stage in the proceeding, and requiring FTC "to expend significant additional resources to conduct discovery and prepare for trial and significantly delay the resolution of the dispute." DE #69, at 15-16 (internal alteration removed). Indeed, further amendment-based trial delay would only exacerbate the potential prejudice FTC faces.

[6] In contrast, the movant in *Neighbors Law Firm, P.C. v. Highland Capital Mgmt., L.P.*, No. 5:09-CV-352-F, 2011 WL 238605 (E.D.N.C. Jan. 24, 2011) (cited by BancTec), "d[id] not cite to any Federal Rules of Civil Procedure or any other authority in support of its request to file the motion for summary judgment out of time." *Id.* at *1. Here, of course, BancTec specifically cited to Rule 6(b).

Second, the Court finds BancTec wrong, again, on the law. The Sixth Circuit has applied, and other Circuits regularly apply, Rule 6(b) when reviewing decisions to amend (or not) a case schedule. *See, e.g.*, *Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 427-28 (6th Cir. 2006) (applying Rule 6(b) to a decision "to grant defendants an enlargement of time to file their answer" after "completion of discovery" and in the midst of briefing on "cross-motions for summary judgment");[7] *Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685-86 (11th Cir. 2013) (applying both Rules 16(b) and 6(b) when reviewing a denial of a motion to alter scheduling order deadlines); *Drippe v. Tobelinski*, 604 F.3d 778, 784 (3d Cir. 2010) (acknowledging "a strict requirement that litigants file formal motions for Rule 6(b) time-extensions when attempting to file in contravention of a scheduling order"); *Smith v. Dist. of Columbia*, 430 F.3d 450, 456-57 (D.C. Cir. 2005) (reviewing a district court's consideration of a "late motion for summary judgment" under Rule 6(b)). The Supreme Court has explicitly described Rule 6(b) as providing the "standard for allowing late filings[.]" *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 113 S. Ct. 1489, 1497 (1993); *cf. Lujan v. Nat'l Wildlife Fed'n*, 110 S. Ct. 3177, 3192 & 3192 n.5 (1990). District courts (within the Sixth Circuit, and around the country) follow suit. *See, e.g.*, *Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc.*, No. 3:14 C 02325, 2016 WL 827744, at *2 (M.D. Tenn. Mar. 3, 2016) ("While Rule 16(b)(4)

---

[7] The Court does not consider some cases' lack of consideration of Rule 6(b) to indicate that Rule 6(b) does not, or can never, apply in the scheduling order amendment context, as BancTec argues. The Court could find (and BancTec presents) no Sixth Circuit case *holding* that Rule 6(b) does not apply in such a context. Rather, the Circuit's focus, in the few cases where the issue remains contested on appeal, has likely centered on the parties' particular arguments, which here (as the Court has covered) included Rule 6(b). The Circuit, quite simply, has never fully grappled with the precise question of the Rule 16 v. Rule 6 interplay. Many amendment issues would not involve an expired deadline, and many expired deadlines would not involve a Rule 16 pre-trial order. Here, the scenario implicates both.

and Rule 6(b) overlap to some degree, [the Court] find[s] that Rule 6(b)(1)(B) provides the appropriate standard, particularly where, as here, a party seeks an extension after a deadline has already passed."); *America's Collectibles Network, Inc. v. Syndicate 1414*, No. 3:08-cv-96, 2009 WL 2929417, at *1-*2 (E.D. Tenn. Sept. 8, 2009) (evaluating a motion to amend the scheduling order under Rule 6(b)); *Beale v. Dist. of Columbia*, 545 F. Supp. 2d 8, 14 (D.D.C. 2008) (calling an argument similar to BancTec's "undoubtedly frivolous": "Rule 6 affords a district court . . . the authority to enlarge time periods set either in the federal rules or by the court's own orders. Rule 16(b)(4) . . . does [not] suggest that it prohibits the . . . consideration of a motion to late file and expand discovery deadlines under Rule 6.").

Third, all the Court said regarding Rule 6 was that it "affects the burden and analysis" regarding the motion because "BancTec's request to change the schedule implicates a deadline already passed[.]" DE #69, at 8. Surely Rule 6(b) does so pertain— a Rule governing requests for time extensions "made after the time has expired," in the Court's view, logically is relevant, as one piece of the overall puzzle, to evaluating a motion for leave to file an amended answer after the scheduling order deadline to file such an amendment motion has passed. Rule 16(b)(4) provides one unified "good cause" standard for schedule modification, which Rule 6(b)(1) reasonably informs through its before- and after-time-expiration bifurcation, only one of which is subject to the more stringent "excusable neglect" showing requirement. The Court stands by that analysis and questions whether, in reality, BancTec actually quarrels with it.[8]

---

[8] BancTec's brief is hard to understand, in this regard. The verbiage it uses is that Rule 6 "does not apply." To the extent BancTec argues that Rule 6 has no relevance *whatsoever* to the issue, the Court sharply disagrees, for the reasons already stated, as BancTec itself

Rule 6, though, was *not* the primary decisional Rule in the Court's Opinion. The Court merely "briefly analyze[d]" Rule 6(b) "because BancTec d[id] include a single citation to the Rule in DE #49[.]" DE #69, at 16. Further, the request was post-deadline. The Court, acknowledging the parties' "scant consideration" of the Rule, relegated it to a mere page-and-a-half discussion in an 18-page Opinion. The Rule 6 discussion, in truth, added little (if anything) of consequence to the Opinion, which was primarily a Rule 16-based denial. *See id.* at 17 ("The Court has substantially explored all the[ excusable neglect] factors in its discussion above."). The Court made its Rule 6 determination "for thoroughness," based only on "the reasons already covered" and "for the reasons already set out extensively[.]" *Id.* BancTec's motion failed conclusively, and primarily, on the Rule 16 basis; the brief Rule 6 analysis, which BancTec itself invited, was simply part of a complete assessment.

Thus, as this discussion suggests, even if the Court completely eliminated any reference to Rule 6(b) in DE #69, BancTec's motion would still fail. First, it would fail regarding Schedule 7 due to DE #20, a decisional basis BancTec does not address whatsoever in the motion for reconsideration. *See* DE #69, at 5-7. Second, the motion would fail in its totality due to Rule 16(b)(4). *See id.* at 7-16 (concluding, for example, that BancTec "wholly flunk[ed]" the "primary" good cause test of diligence: "BancTec did not act diligently in attempting to meet the case's pleading amendment deadline."). In the reconsideration motion, BancTec deliberately[9] chose not to "re-argue diligence," the

---

did initially. *See* DE #49, at 1. To the extent BancTec argues that Rule 6 "does not apply" to provide the foundational / primary rule of decision, in the particular circumstances, the Court agrees, as the subsequent discussion elucidates.

[9] Indeed, remarkably, in this context, when attempting to persuade the Court that its prior treatment clearly was wrong.

11

primary basis for the Court's prior decision. *See* DE #77-1, at 5 n.1. Thus, even if the Court did not apply Rule 6(b), as BancTec requests, nothing would change regarding the outcome of the motion. For all these reasons, BancTec's argument regarding Rule 6(b) leads to no relief.

**Second—Newly Available Evidence**

Next, BancTec argues for reconsideration based on "two documents produced by FTC and two admissions by FTC" between October 31 and December 31, 2016. DE #77-1, at 8-11. The documents at issue are a series of December 2009 emails (DE #77-5) and a Schedule 7 lease file checklist (DE #77-6); the admissions are to BancTec admission requests 9 and 10 (DE #77-7, at 7).

The Court utterly fails to perceive how any of these documents or admissions impact DE #69's analysis or the Rule 16 good cause exploration. Remember that the matter is before the Court on BancTec's request for reconsideration of the prior Rule 16-based denial, based primarily on BancTec's failure to establish good cause to modify the schedule to permit an amended pleading following the deadline to move to amend. As a foundational procedural starting point, none of these newly submitted documents or admissions affects the Court's prior good cause / diligence analysis whatsoever, leading to no relief via reconsideration. The standard is **not** that BancTec gets to untimely assert fraud counterclaims if FTC, in fact, committed fraud; the standard is that BancTec gets to untimely assert fraud counterclaims if it demonstrates good cause for the schedule

modification. Strikingly, in the Court's view, BancTec makes no effort to explain how these new submissions should impact the prior analysis.[10]

Further, BancTec says that FTC produced the December 2009 emails (DE #77-5) on November 16, 2016. DE #77-1, at 8. This was *before* BancTec's reply deadline on the underlying motion to amend, *see* DE #61 (Response, filed 11/7/16, meaning BancTec's reply was due 11/21/16), but BancTec did not bring the emails to the Court's attention in reply.[11] Briefing on FTC's motion to file a surreply lasted several more days. DE ##63, 64, and 66. BancTec even requested a discovery-dispute telephonic conference in December 2016, but *still* did not bring the December 2009 emails to the Court's attention. DE ##67, 71. All told, *over a month* passed between FTC's production of the emails and the Court's decision on the motion to amend, but BancTec made no efforts in that period to bring the issues to the Court's attention.

Same for the checklist and admissions. BancTec says FTC produced the checklist (DE #77-6) on December 7, 2016. DE #77-1, at 9. Again, in the *twenty days* between that production and the Court's decision, BancTec perceived no need to alert the Court to this document. Finally, FTC certified service of the admissions on December 22, 2016—the day of a telephonic discovery conference and well before the Court's opinion—but BancTec did not bring the clear admissions to the Court's attention or assert they should change the analysis. Regardless, BancTec has known of FTC's position on the two

---

[10] For example, BancTec argues that the two documents and two admissions "show that FTC fraudulently induced BancTec to enter the schedules 7 and 8 agreements." DE #77-1, at 8. That says nothing about—under the applicable standard—whether BancTec justifies reconsideration of the prior denial of the untimely motion to amend the schedule.
[11] BancTec (perhaps unwisely) chose to reply well before the deadline, DE #62 (Reply, filed 11/9/16), but that litigation choice does not impact the Court's diligence analysis.

13

admitted matters for many years, throughout this and the related state-court litigation, but did not earlier argue this confirmatory discovery as a basis to permit a tardy amendment.

Much of BancTec's argument regarding these documents simply goes to one of the ultimate case questions (or, perhaps more accurately, an issue BancTec wishes were an ultimate case question), which the Court will address, as appropriate, as part of assessment of the numerous dispositive motions. The issue here, though, is not the substantive question BancTec argues; rather, it is whether BancTec justifies, in the largely procedural Rule 16(b)(4) context, reconsideration of the prior conclusion that it did not establish good cause to amend the answer following passage of the deadline to move to amend.[12] The Court adheres to its prior analysis.[13]

---

[12] The Court previously expressly declined "to engage in an extensive, alternative Rule 15 / futility review." DE #69, at 17 n.4. The Court's prior opinion, thus, in no way depended on the merits of the claims BancTec sought to assert, so BancTec's merits-based argument here does not alter the prior conclusion.
   Even substantively evaluating the documents, the Court fails to perceive any significance vis-à-vis BancTec's ability to amend the answer. Rather, the December 2009 emails appear to simply confirm FTC's basic position in the case—that the "payment of remaining lease payments" language "was not in the lease that was signed by Banc[T]ec." DE #77-5, at 1. Jim Bates, the FTC President, confirmed that he "refused to allow John and Banc[T]ec to change the language. The lease remains a FMV at end of term lease[.]" *Id.* As the Court indicated earlier, "whether and how the emails may impact the case" remains to be seen, DE #69, at 18, but they are no justification to call the prior Rule 16 determination into doubt.
   The Court sees even less significance to the checklist. DE #77-6. BancTec does not argue the checklist *itself* has any particular substantive meaning. The concern, instead, appears to be about a "schedule 7 quote." DE #77-1, at 10. BancTec alleges this quote "was not included in the file folder," *id.*, but admits that FTC produced it "as an attachment to an email." *Id.* at 10 n.7.
   The same analysis applies to the document improperly mentioned first in the Reply. *See* DE #94, at 11. BancTec does not attach this document or, in any coherent way, connect it to the prior amendment denial or explain why it should change the outcome.

[13] In this context, and given some of the Court's comments in DE #69, *see also* DE #87, at 2, BancTec's decision to spend much of the Reply (DE #94) airing (mostly discovery-related) grievances with FTC and, in fact, attacking the character of opposing counsel,

**Third—Manifest Injustice**

Finally, BancTec argues, in one paragraph, that "[m]anifest injustice will occur if BancTec's motion for reconsideration and motion for leave are not granted[.]" DE #77-1, at 11. The entire basis[14] for the alleged manifest injustice is an assertion that the counterclaim BancTec wishes to assert is a compulsory counterclaim. *Id.* BancTec's argument seems to go as follows: operation of the Rules and Scheduling Order denied BancTec the ability to assert the desired counterclaim, which (if indeed compulsory)[15] may deny BancTec the opportunity ever to raise it, which is manifestly unjust.[16]

The Court will not unduly linger on this argument; it sees no merit to the contention that proper operation of Rule 16 and enforcement of a scheduling order work *any* injustice on a party, must less *manifestly* so. *See, e.g.*, *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518-19 (10th Cir. 1990) (affirming, on Rule 16 grounds, "the denial of the defendants' motion for leave to file [a] compulsory counterclaim"); *see also Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006); *All W. Pet Supply Co. v. Hill's Pet Prods. Div., Colgate-Palmolive Co.*, 152 F.R.D. 202, 206 (D. Kan. 1993) ("Hill's has not persuaded the court that the pretrial order must be amended to permit it to assert its supplemental counterclaim in order to avoid manifest injustice."); *Prevmed, Inc.*

---

instead of confronting the substance of FTC's response, emphatically **does not help** BancTec. The Court finds the Reply, charitably construed, to add little of significance (at least until page 10 of 13) related to the reconsideration merits.

[14] To the extent the manifest injustice argument bled into the preceding section, *see* DE #77-1, at 10, the Court rejects it for the reasons previously stated.

[15] The Court makes no determination whether the counterclaims BancTec seeks to assert are actually compulsory. There is no injustice through operation of the Rules and the Scheduling Order here, whether the counterclaims are compulsory or not.

[16] This comes perilously close, in the Court's view, to making a categorical argument that Rule 16(b)(4) contains an unwritten (but automatic) compulsory-counterclaim (or, at least, a meritorious-compulsory-counterclaim) exception.

*v. MNM-1997, Inc.*, No. H-15-2856, 2016 WL 3773399, at *10 (S.D. Tex. July 8, 2016) (denying motion for leave to tardily amend and assert counterclaims, per Rule 16(b)(4), and stating, "In addition to failing to explain its delay (both in conducting discovery and seeking leave to assert original counterclaims), FCL fails to demonstrate that allowing the proposed counterclaims to be asserted at this late date would not unduly prejudice the plaintiffs."); *Small v. Ramsey*, No. 1:10CV121, 2012 WL 405049, at *2 (N.D. W. Va. Feb. 8, 2012) (denying motion to amend, per Rule 16(b)(4), to assert a counterclaim).[17] The Court perceives this situation to exemplify the Rules' appropriate operation, not demonstrate their evident unfairness.

*Conclusion*

For the reasons stated, the Court **DENIES** DE #77.

This the 26th day of June, 2017.

Signed By:
Robert E. Wier
United States Magistrate Judge

---

[17] The *sole* case BancTec cites on the topic, *Wayzata Bank & Trust Co. v. A & B Farms*, 855 F.2d 590 (8th Cir. 1988), is wholly inapposite. *Wayzata* made the quoted statement in the context of simply explaining Rule 13 and finding no prejudice to the party opposing counterclaim assertion. *Id.* at 594. Rule 13 is not the Rule at issue here, and the Court has concluded there would be significant prejudice to FTC if the Court permitted the amendment.